Monmouth County Court of Common Pleas.

JOHN WILKERSON, PETITIONER-APPELLEE, v. STEIN-BERG & SPIELFOGEL, INC., RESPONDENT-APPELLANT.

Decided June 29, 1942.

For the petitioner-appellee, *Joseph F. Mattice.*

For the respondent-appellant, *Foley & Francis* (by *Gerald T. Foley,* of counsel).

GIORDANO, C. P. J. This is an appeal from a judgment in favor of the petitioner-appellee entered in the Workmen's Compensation Bureau on January 10th, 1942.

The single question to be determined is whether or not the evidence justifies a finding that the petitioner suffered an injury arising out of and in the course of his employment by the respondent-appellant, either as a matter of law or as a matter of fact.

It is undisputed that the respondent-appellant maintains a wholesale grocery business in the City of Asbury Park, New Jersey, and operates a number of motor trucks in the course of said business. It is also undisputed that sometime prior to December 21st, 1940, it had in its employ one Arthur Riley and one Charles Venable. Riley was in charge of the delivery department, supervising the operation of those employed for delivery purposes and directing the operation of respondent's trucks for such purposes. Venable was employed by the respondent-appellant as a truck driver and was under the supervision of Riley in that particular.

It is uncontradicted that the petitioner was hired by the respondent-appellant as an extra man at the daily wage of two ($2) dollars on many occasions prior to December 21st, 1940. The petitioner-appellee testified that on the morning of December 21st, 1940, Venable called at his home as it had been his custom on many occasions prior to this date, and requested him to work. Petitioner-appellee and Venable went directly to the plant and proceeded to deliver orders to the beachfront in the City of Asbury Park; that Venable then drove the truck of Steinberg & Spielfogle, respondent-appellant, to Deal, New Jersey, where they proceeded to move some furniture. The testimony further discloses that at noontime Venable drove the petitioner-appellee to his home so that he might partake of his lunch and called for him after his lunch, after which they both proceeded in the truck of respondent-appellant to the plant of respondent-appellant and delivered some more orders. The facts further disclose that after the last mentioned deliveries were completed, Venable drove petitioner-appellee to Deal where they again moved some furniture and that it was while so doing that the petitioner-appellee was injured by stepping in a hole in the floor of the truck.

When the furniture was entirely moved, Venable and the petitioner-appellee returned to the plant where the petitioner-appellee informed Riley of his injury and received permission to go to Dr. Vaccaro. The testimony further discloses that Riley paid him $2 for his day's work. It also appears from the testimony that Arthur Riley had on many occasions requested Venable to hire extra men and that particularly on the morning of December 21st, 1940, he so instructed Venable. Riley denies authorizing Venable to move the furniture in question on the day in question and further denies that he knew of petitioner's injuries until a few days later, although Riley admitted that he made his home with Dr. Drake in Deal from whose premises the furniture was moved.

The principal contention of the respondent-appellant is that neither Riley nor Venable, admitted employees of respondent-appellant, had authority to employ petitioner to move furniture and that, therefore, petitioner could not have

transferred his services from the employ of respondent-appellant, Steinberg & Spielfogel, Inc., to either Riley, Venable or Drake, since there was no expressed authority to transfer the services of petitioner to another.

The petitioner-appellee prior to the date of the accident in question had worked for Steinberg & Spielfogel, Inc., for more than five years, off and on, some weeks one day a week, some weeks two days a week and some weeks three days a week, this employment depending entirely upon Steinberg & Spielfogel, Inc., and the testimony indicates that on all these occasions the respondent-appellant's truck would come to petitioner's home and he would be notified by the driver that he was wanted for work that day. This was an established custom according to petitioner's testimony and the same method of hire was pursued on December 21st, 1940, the day of the accident.

The testimony also reveals that the petitioner-appellee received his orders from the driver of the truck while on the truck and that when at the plant of respondent-appellant he received his orders from the officials of the firm, the foreman, Arthur Riley or the driver.

The rule is, as I understand it, that the principal is bound by the acts of his agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. The question in every case depending upon the apparent authority of the agent is whether the principal has, by his voluntary act, placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question. *Essbee Amusement Corp.* v. *Greenhaus,* 114 *N. J. L.* 492; 177 *Atl. Rep.* 562.

The testimony in this case in regard to the employment of the petitioner is briefly as follows: The petitioner testified that Venable picked him up as usual, went to the plant of Steinberg & Spielfogel, did some work around the plant for an hour or an hour and a half, and then was told by Riley to go to Barnes Street to move some furniture, and that he was

paid by Riley for his day's work as usual. He testified that he worked for Steinberg & Spielfogel as a helper on the truck, that Riley was the foreman of the warehouse out of which he operated. Riley testified that the petitioner reported to work that morning at the plant of Steinberg & Spielfogel, that petitioner helped Venable make three deliveries, and that he, Riley, said nothing further to petitioner regarding moving the furniture. Venable testified that he did not report to work the morning of December 21st, 1940, and denies that he made any deliveries for Steinberg & Spielfogel that morning. However, Norman Steinberg, an official of the corporation, testified that the payroll record showed that Venable reported to work on December 21st, 1940.

The formal petition as filed with the Bureau sought compensation against Arthur Riley and Charles Venable as well as Steinberg & Spielfogel, Inc., so that Riley and Venable were interested witnesses. In reading the testimony I am constrained to the belief that these two witnesses were not as truthful as they could have been, but their apparent evasive and contradictory testimony does not undermine the straightforward testimony of petitioner as to the manner and fashion in which the petitioner was hired on previous occasions for a period of some five years. Petitioner's testimony as to his hiring, as to his work about the plant that day and payment for his day's work by the respondent, Steinberg & Spielfogel, is on the whole corroborated.

As indicated by the testimony of Norman Steinberg, an official of the corporation, petitioner had moved furniture on previous occasions for and on behalf of the members of the family of the respondent, Steinberg & Spielfogel, and from custom and experience while in the employ of respondent-appellant, the petitioner, in the opinion of this court, was justified in assuming that Riley and Venable had authority to request him to do the work which he did on the date of the accident. Petitioner was merely a helper on the truck and it was not within his province to question the type of work he should do in return for his daily wages which were paid to him by Riley in the usual way out of company funds.

If the services of petitioner were hired out by Riley and

Venable to another party, it was their duty as agents of the corporation, to so notify petitioner, otherwise, under the rule of law, the principal, Steinberg & Spielfogel, Inc., is bound by the acts of its agents, Riley & Venable, in the contract of hire. Certainly there is no evidence that petitioner consented to any transfer of his services, which, of course, respondent-appellant under the circumstances, must show.

As far as the petitioner is concerned he was acting under orders from the truck driver who was his immediate superior. He was either to obey his superior or possibly lose his employment. In view of this he was certainly acting within the scope of his employment, and, as stated, the act cannot be said to be *ultra vires* the corporate powers. See *Perragino* v. *McCue's Dairy* (Supreme Court, June 16th, 1942, reported New Jersey Law Journal).

From the facts as proved flows the proper deducible inference, tantamount to proof of the fact that respondent's truck driver had the right to, and in fact, did at times actually supervise the work of the helper on his truck; and that he was clothed by the respondent with at least apparent, if not expressed authority so to do.

It is my opinion that from the facts, reasonable inferences and the law, that the award of the Compensation Bureau should be affirmed in all respects.